**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| FALL LINE PATENTS, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>QUEST DIAGNOSTICS INCORPORATED and QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 5:26-cv-00085<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

**<u>ORIGINAL COMPLAINT FOR PATENT
INFRINGEMENT</u>**

Plaintiff Fall Line Patents, LLC ("Fall Line" or "Plaintiff") files this original complaint against Quest Diagnostics Incorporated and Quest Diagnostics Clinical Laboratories, Inc. ("Quest Diagnostics" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

**<u>PARTIES</u>**

1.    Fall Line is a limited liability company formed under the laws of the State of Oklahoma, with its principal place of business at 2121 South Yorktown, #1103, Tulsa, Oklahoma, 74114.

2.    Defendant Quest Diagnostics Incorporated is a corporation organized

1

under the laws of the State of Delaware.  It can be served with process by serving its registered agent: Corporation Service Company DBA CSC - Lawyers Incorporating Service Company; 211 E. 7th Street, Suite 620; Austin, TX 78701.

3. Defendant Quest Diagnostics Clinical Laboratories, Inc. is a corporation organized under the laws of the State of Delaware.  It can be served with process by serving its registered agent: Corporation Service Company DBA CSC - Lawyers Incorporating Service Company; 211 E. 7th Street, Suite 620; Austin, TX 78701.

## JURISDICTION AND VENUE

4. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Upon information and belief, Defendant has transacted business in this district and has committed, by itself or in concert with others, acts of patent infringement in this district.  For example, Quest Diagnostics makes, has made, uses, imports, provides, supplies, distributes, sells, or offers to sell the MyQuest Mobile App, as set forth below.

6. In addition, Quest Diagnostics maintains a regular and established place of business in this district through numerous locations, including, for

2

example, at 5902 Summerfield Dr., Texarkana, Texas, 75503; 822 S. Fleishel Ave., Tyler, Texas, 75701; and 3600 Communications Pkwy, #647, Plano, Texas, 75093. Quest Diagnostics uses the MyQuest Mobile App to direct customers to, and receive requests for test results, lab appointments, etc. from customers for, one or more Quest Diagnostics locations in this district.

7.     Quest Diagnostics is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

## THE TECHNOLOGY

8.     The patent-in-suit, U.S. Patent No. 9,454,748 ("the '748 Patent"), titled "System and Method for Data Management," teaches methods for managing and collecting data from a remote computing device.  Specifically, the invention addresses the need to collect location-specific information on a variety of hardware and software platforms without the need to create separate and individualized software for each of the numerous manufacturers of remote computing devices. The inventor of the '748 Patent, as well as its parent applications and patents,

3

developed systems and methods to enable developers to create a single application that could function on numerous models of remote computing devices, without the need to create separate software for each model, as was often required in the prior art.

## COUNT I

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,454,748

9.      On September 27, 2016, the '748 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Method for Data Management."

10.     Fall Line is the owner of the '748 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '748 Patent against infringers, and to collect damages for all relevant times.

11.     Quest Diagnostics made, had made, used, imported, provided, supplied, distributed, sold, and/or offered Quest Diagnostics mobile apps that, in conjunction with Quest Diagnostics servers, create and execute a location-specific questionnaire to collect responses from users.

12.     By doing so, Quest Diagnostics has directly infringed (literally and/or under the doctrine of equivalents) Claim 7 of the '748 Patent.  The infringement in

4

this regard is ongoing.

13.     Fall Line has been damaged as a result of the infringing conduct by Quest Diagnostics.  Thus, Quest Diagnostics is liable to Fall Line in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

14.     Fall Line and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '748 Patent.

## **ADDITIONAL ALLEGATIONS REGARDING DIRECT INFRINGEMENT**

15.     Defendant has also directly infringed the '748 Patent by exercising direction or control over the use of the accused products by its customers.  When Defendant's customers download and use the accused products, Defendant is putting the accused products into service and conditions the benefit received by each customer from using the accused products (which utilize the methods taught by the '748 Patent).  Use of the accused products in such manner infringes the '748 Patent.

## **ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT**

16.     Defendant has also indirectly infringed the '748 Patent by inducing others to directly infringe the '748 Patent.  Defendant has induced the end-users,

Defendant's customers, to directly infringe (literally and/or under the doctrine of equivalents) the '748 Patent by using the accused products.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes Claim 7 of the '748 Patent.  Such steps by Defendant included, among other things, advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '748 Patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the accused products by Defendant's customers would infringe the '748 Patent.  Defendant's inducement is ongoing.

17.    Defendant has also indirectly infringed by contributing to the infringement of the '748 Patent.  Defendant has contributed to the direct infringement of the '748 Patent by the end-user of the accused products.  The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe Claim 7 of the '748 Patent.  The special features constitute a material part of the invention of one or more of the claims of the '748 Patent and are not staple articles

of commerce suitable for substantial non- infringing use.  Defendant's contributory infringement is ongoing.

18.    Defendant has knowledge of the '748 Patent at least as of the date when it was notified of the filing of this action.

19.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Fall Line's patent rights.

20.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.  Defendant's direct and indirect infringement of the '748 Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Fall Line's rights under the patent.

21.    Fall Line has been damaged as a result of the infringing conduct by defendant alleged above.  Thus, Defendant is liable to Fall Line in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## <u>ADDITIONAL ALLEGATIONS REGARDING<br>PATENTABILITY</u>

22.    The '748 Patent is directed to improving data management on remote

7

handheld computers that are "loosely networked" to servers for the purpose of collecting information in the field. '748 Patent at 1:19-24; 1:33-40.

23.   In 2002, when the parent provisional application for the '748 Patent was filed, the then-existing remote handheld computers suffered from many technical problems. These included:

- operating systems for the remote handheld computers "mimic[ed] those of desktop and laptop systems, despite the fact that handheld devices are typically used in a different manner and have radically different resources," *see, e.g.,* '748 Patent at 1:45-48;

- compatibility issues prevented applications developed for one remote computing device from being used on a different remote computing device, *id.* at 1:49-2:2;

- compatibility issues prevented data from being shared across different devices, *id.* at 2:3- 12;

- prior-art approaches to overcoming compatibility issues, including using i-code and tokens and layer to execute them, lacked optimization, and required a high level of programming skill to create, *id.* at 2:13-31;

- prior-art systems typically required "custom" programs "tailored for a specific customer" at high cost, *id.* at 2:41-64;

- prior-art systems required custom development and compilation for each separate type of device, *id.* at 3:1-7;

- prior-art systems required an entire program to be recompiled and reinstalled to implement a single change in the program, *id.* at 3:7-10;

- networks available to devices in the field were not always available, *id.* at 3:64-67;

- networks available to devices in the field have limited bandwidth, *id*. at 3:67-4:1; and

- prior-art approaches to dealing with intermittent networks, including store-and- forward and real-time transmission, were not satisfactory, *id*. at 4:3-17.

24.    It is these technical problems with the prior-art remote handheld computers that the inventor of the '748 Patent sought to address.

25.    Regarding the compatibility issues, the then-existing practice was "for a business to commission the authoring of a custom program aimed at a particular need." *Id*. at 2:57-59.  What that means is that, prior to the inventions disclosed in the '748 Patent, when the program running on the remote handheld computer needed changing, developers must first make the change on a development system and then re-transfer the entire program to each target device.  *Id*. at 3:7-10.  If more than one type of device is used, that process must be completed for each type of device.  *Id*.

26.    To address this problem, the inventor of the '748 Patent used device-independent (or device-indifferent) tokens and the creation of tokenized questionnaires.  By tokenizing a questionnaire, it can be executed on a remote handheld computer without the need to recompile and reload a software package onto the handheld computer.  *Id*. at 5:21-32.  This means that changes, including incremental changes, can be made automatically and without the need to reload the entire program.  *Id*. at 5:26-32.  The use of device-independent tokens also allows

the questionnaire to be used on different types of devices without the need to create a custom program for each device type.  *Id.* at 4:66-5:2.  The application of tokenizing in the context of the methods claimed by the '748 Patent is an advance over the prior art, and was not well- understood, routine, and conventional.  This advance is reflected in the claims of the patents-in-suit.

27.    Additionally, to handle the loose nature of networks that are available to handheld devices, the '748 Patent explains that "if any communication connection is available between devices wishing to communicate, network transmissions occur normally, in real time."  *Id*. at 5:7-10.  On the other hand, "[i]f a network connection is unavailable at that moment, the information is temporarily stored in the device and later transmitted when the connection is restored."  *Id*. at 5:10-12.  This approach, along with the use of device-independent tokens, enables a reduction to the "load on a communication channel of finite bandwidth."  *Id*. at 4:36-39.  This connection scheme represented an advance over the prior art and was not well-understood, routine, and conventional.  It is reflected in the claims of the patents-in-suit.

28.    In addition, the '748 Patent teaches using an integral GPS device for multiple purposes, including causing location information to be automatically collected by the executing questionnaire, creating questionnaires that are customized for particular locations, and executing questionnaires when the remote

10

computing devices is at certain locations.  *Id.* at 5:33-48; 8:56- 61; 10:55-65.  This use of an integral GPS device represented an advance over the prior art and was not well-understood, routine, and conventional. Specifically, it was unconventional to use an integrated GPS unit to automate the collection and use of location identifying information for purposes of customizing a questionnaire.  It was also unconventional to automatically collect location identifying information for transmission to a server so that questions customized for that location could be generated and sent back to the handheld device.  This unconventional technology is reflected in the claims of the patent-in-suit, including Claim 7.  *See, e.g., Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, Case No. 6:18-cv-00407-RWS, Dkt. No. 151 [5/25/21 Order] (denying motion to dismiss because Fall Line had plausibly alleged inventive concepts); Dkt. No. 348 [7/11/23 Public Version of 6/29/23 Order] (granting Fall Line's motion for summary judgment of validity under section 101).

## **JURY DEMAND**

Fall Line hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

Fall Line requests that the Court find in its favor and against Defendant, and that the Court grant Fall Line the following relief:

a.      Judgment that one or more claims of the '748 Patent have been

infringed, either literally and/or under the doctrine of equivalents, by Defendant and/or all others acting in concert therewith;

b.      Judgment that Defendant accounts for and pays to Fall Line all damages to and costs incurred by Fall Line because of Defendant's infringing activities and other conduct complained of herein, including an award of all increased damages to which Fall Line is entitled under 35 U.S.C. § 284;

c.      That Fall Line be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.      That this Court declare this an exceptional case and award Fall Line its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

e.      That Fall Line be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 30, 2026                    Respectfully submitted,

/s/ *Matthew J. Antonelli*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah

Texas Bar No. 24066017
rehan@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Fall Line Patents, LLC*

13